FILED

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

SEP 2 4 2020

U.S. CLERK'S OFFICE
EVANSVILLE, INDIANA

UNITED STATES OF AMERICA,       )
                                )
            Plaintiff,           )
                                )          SEALED
         v.                      )
                                )     CAUSE NO.: 1:20-CR-⊘38 - JPH - TAB
DARRYL BRENT WALTZ, and          )
JOHN S. KEELER,                  )
                                )
            Defendants.          )

## INDICTMENT

THE GRAND JURY CHARGES THAT:

## GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise specified:

### I.       Relevant Entities and Individuals

1.       The defendant, DARRYL BRENT WALTZ, was an Indiana politician and businessman.   WALTZ served as an Indiana State Senator from 2004 to 2016.   WALTZ was a candidate in 2015 and 2016 leading up to the May 2016 primary election for an open seat to represent Indiana's Ninth Congressional District in the United States House of Representatives. On or about July 16, 2015, WALTZ announced his candidacy for the Office of the House of Representatives representing the Ninth District of Indiana.

2.       The defendant, JOHN S. KEELER, was Vice President and General Counsel of New Centaur, LLC, a gaming company formed in Delaware and based in Indianapolis, Indiana.

3.       Brent Waltz for Congress was the official federal campaign committee formed to receive campaign contributions for the election of WALTZ.   Brent Waltz for Congress was

located in Greenwood, Indiana.   On August 4, 2015, the Federal Election Commission received the Statement of Organization for Brent Waltz for Congress, which reflected the campaign's creation date of July 16, 2015.   This Statement listed Kelley Rogers as the Designated Agent for the campaign.

4.     Kelley Rogers was a political consultant residing in Maryland.   Rogers operated a consulting company called Strategic Campaign Group (SCG), as well as several affiliated companies, including Campaign Communications, Inc. (CCI), and Kelley Rogers Racing, LLC (KRR).

5.     Charles "Chip" O'Neil was an employee of Kelley Rogers and a political consultant.   O'Neil was the Vice President of SCG and signatory on a CCI bank account.   O'Neil and Rogers worked together out of the same office and were the only active employees of SCG.

6.     Between on or about January 1, 2015 and continuing at least through the primary elections on or about May 3, 2016, WALTZ conducted a campaign for the Office of United States Representative.   During this campaign, WALTZ and others solicited donations to his campaign. A primary election was held on or about May 3, 2016, at which WALTZ was defeated and his campaign ended.   During the course of the campaign, Brent Waltz for Congress reported to the Federal Election Commission that it received approximately $152,078.49 from individual contributors, loans from the candidate (WALTZ) in the amount of $113,700.00, and no contributions from corporations.

7.     Kelley Rogers served as an advisor and/or consultant to the WALTZ campaign.   In this capacity, Rogers communicated with WALTZ about fundraising for the campaign.   Rogers also communicated with KEELER about contributing to WALTZ's campaign.

8.      Straw Donors 1 through 9 included WALTZ as well as friends and/or associates of Kelley Rogers and Charles O'Neil living outside Indiana.   A "straw donor" is a person who contributes to a campaign in his or her name despite receiving an advance payment or subsequent reimbursement of all or a part of that contribution from another source, thereby acting as an intermediary between the true source of the contribution and the candidate or campaign that receives the contribution, which is prohibited under federal law.

9.      Straw Donor 10 was WALTZ's relative and a resident of Indiana.

10.     Straw Donor 11 was WALTZ's business associate and a resident of Indiana.

11.     Straw Donor 12 was married to Straw Donor 11 and a resident of Indiana.

12.     Straw Donor 13 was WALTZ's friend and associate and a resident of Indiana.

13.     Company B operated in Indiana and employed WALTZ and Straw Donor 11.

14.     Person A was WALTZ's relative and a resident of Indiana.

15.     Person B was WALTZ's relative and a resident of Indiana.

## II.      **The Election Act**

16.     The Federal Election Campaign Act of 1971, as amended, Title 52, United States Code, Sections 30101, *et seq.* ("Election Act"), limited financial influence in the election of candidates for federal office, including for the United States Congress, and provided for public disclosure of the financing of federal election campaigns, as follows:

      a.   The Election Act prohibited contributions by corporations in connection with any election at which a United States Representative is to be voted for, or in connection with any primary election held to select candidates for the Office of United States Representative.

b.  Under the Election Act, prohibited corporate contributions included, but were not limited to, any direct or indirect payment, distribution, loan, advance, deposit, or gift of money, services, or anything of value from a corporation to any candidate or campaign committee in connection with any election to the Office of United States Representative.   Prohibited corporate contributions also included, but were not limited to, the payment by a corporation of compensation for the personal services of any person which are rendered to a political committee without charge for any purpose.

c.  The Election Act prohibited any person from causing a corporate campaign contribution.   The Election Act also prohibited any candidate, political committee, or other person from knowingly accepting or receiving such a corporate contribution.

d.  The Election Act limited the amount and source of money that may be contributed to a federal candidate or that candidate's authorized campaign committee.

e.  The Election Act expressly states that contributions made through an intermediary are treated as contributions from the original payor.

f.  In 2015 and 2016, the Election Act prohibited both primary and general election campaign contributions in the name of intermediaries or straw donors to any candidate.   The Election Act also prohibited any candidate, political committee, or other person from knowingly accepting or receiving a contribution in the name of an intermediary or straw donor.

g.  In 2015 and 2016, the Election Act limited both primary and general election campaign contributions by individuals to $2,700 from any individual to any one candidate.   The Election Act also prohibited any candidate, political committee, or other person from knowingly accepting or receiving a contribution in excess of these limitations.

17.   The Federal Election Commission was an agency and department of the United States with jurisdiction to enforce the limits and prohibitions of the Election Act, and to compile and publicly report accurate information about the source and amounts of contributions.

18.   Pursuant to the Election Act, the Federal Election Commission required campaign committees, including Brent Waltz for Congress, to file periodic reports of receipts and disbursements identifying, among other things, each person who made a contribution to such committee during the relevant reporting period whose contribution or contributions had an aggregate amount or value in excess of $200 within the calendar year, together with the date and the amount of any such contribution.   In preparing these reports, federal candidates and political committees relied on the information provided by the donor, including the individual's name, address, and occupation.   These periodic reports, which were filed with the Federal Election Commission and made publicly available, were intended to provide citizens with a transparent record of contributions to candidates for federal office.

## COUNT ONE
### 18 U.S.C. § 371
**(Conspiracy to Make and Receive Corporate Campaign Contributions, False Statements, and to Obstruct Justice)**

19.   Paragraphs 1 through 18 of this Indictment are re-alleged and incorporated by reference as if set forth fully herein.

20.   From in or about January 2015 through in or about November 18, 2015, in the

Southern District of Indiana and elsewhere, the defendant,

## JOHN S. KEELER,

knowingly and voluntarily conspired and agreed with Kelley Rogers, Charles O'Neil, and with other persons both known and unknown to the grand jury, to commit the following offenses against the United States:

a.  To knowingly and willfully make contributions of corporate money in connection with any election at which a United States Representative is to be voted for, and in connection with any primary election to select candidates for United States Representative, which aggregated no less than $25,000 in a calendar year, in violation of Title 52, United States Code, Sections 30118(a) and 30109(d)(1)(A)(i) and Title 18, United States Code, Section 2;

b.  To knowingly and willfully cause the submission of materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Federal Election Commission, a department or agency of the executive branch of the government of the United States, in violation of Title 18, United States Code, Sections 1001(a)(2) and 2; and

c.  To knowingly conceal, cover up, falsify, and make a false entry in records and documents, and cause others to do so, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, and in relation to and contemplation of such matter, in violation of Title 18, United States Code, Sections 1519 and 2.

### A.  <u>Purposes of the Conspiracy</u>

21.     The purposes of the conspiracy were to facilitate and cause unlawful and unreported corporate contributions from New Centaur, LLC, through Rogers and O'Neil, to the Brent Waltz for Congress campaign, in order to: evade the prohibition against corporate contributions to Brent Waltz for Congress; disguise the fact that New Centaur, LLC, was the true source of the funds that KEELER caused New Centaur, LLC to contribute to the campaign; and to cause officials of the Brent Waltz for Congress campaign to unwittingly file false reports of contributions that concealed from the Federal Election Commission and the public the corporate contributions caused by KEELER and others.

### B.  <u>The Manner and Means of the Conspiracy</u>

22.     The manner and means of the conspiracy included, but were not limited to, the following:

23.     KEELER and Rogers agreed that KEELER would cause New Centaur, LLC, to transfer money from its accounts to Rogers, and Rogers would contribute that money to WALTZ's campaign.  KEELER and Rogers agreed that Rogers would create phony invoices and agreements that purported to reflect services to be performed for New Centaur, LLC, by entities that Rogers controlled, although KEELER and Rogers knew and intended that these services would not be performed by anyone at any time.

24.     KEELER, Rogers, and O'Neil knew and intended that these invoices would conceal the fact that the payments from New Centaur, LLC, were, in truth and in fact, illegal corporate contributions that they intended to be transferred to WALTZ's campaign, and not payment for the services indicated in the fake invoices.

25.     Upon receipt of the phony invoices from Rogers and O'Neil, KEELER caused

payments to be issued from corporate accounts of New Centaur, LLC, to two entities controlled by Rogers and O'Neil, namely, KRR and CCI.

26.      Rogers and O'Neil recruited Straw Donors 1 through 9, who agreed to make contributions in their names in the amount of $2,700 to Brent Waltz for Congress in exchange for a full reimbursement of those contributions by Rogers and O'Neil.   Straw Donors 1 through 9 did in fact contribute $2,700 each in their names to Brent Waltz for Congress, and Rogers and O'Neil reimbursed each Straw Donor using the money they received from New Centaur, LLC.   Rogers and O'Neil also agreed to make conduit contributions in their names, and they reimbursed themselves with the money from New Centaur, LLC.

27.      Rogers also made several transfers of the New Centaur, LLC, money directly to WALTZ personally.

28.      Rogers also served as a campaign advisor to the WALTZ campaign and used some of the money from New Centaur, LLC to cover his consulting fees, thereby using the corporate contributions to pay for services provided to the WALTZ campaign, which is a violation of the Election Act as it is a prohibited "in-kind" contribution.   WALTZ knew that Rogers's compensation was covered by the New Centaur, LLC money.   Indeed, neither WALTZ nor his campaign paid Rogers for his services during the course of the campaign.

29.      KEELER, WALTZ, Rogers, and O'Neil concealed from officials of the WALTZ campaign, the Federal Election Commission, and the public the use of New Centaur, LLC, corporate funds to make illegal contributions to Brent Waltz for Congress, thereby causing the campaign unwittingly to file reports with the Federal Election Commission that were materially false, in that these reports failed to provide accurate information concerning the source and amount of the corporate contributions as required by law.

C.    **Overt Acts in Furtherance of the Conspiracy**

30.    In furtherance of the conspiracy, and to accomplish its purpose, KEELER, Rogers, O'Neil, and others known and unknown to the grand jury, performed or caused the performance of one or more of the following overt acts, among others not described herein, in the Southern District of Indiana and elsewhere on or about the following dates:

a.    On or about April 6, 2015, an assistant at New Centaur, LLC, purchased a roundtrip plane ticket in Kelley Rogers' name so that Rogers could travel from Washington, D.C., to Indianapolis, Indiana on April 10, 2015, to meet with an executive of New Centaur, LLC at the Indianapolis airport.

b.    On or about April 10, 2015, Rogers flew to Indianapolis and met with the New Centaur, LLC executive at the Indianapolis airport.  At this meeting, the New Centaur, LLC executive and Rogers agreed that New Centaur, LLC would provide money to Rogers so that Rogers could contribute that money to WALTZ's campaign.  The New Centaur, LLC executive and Rogers agreed that Rogers would create fake invoices and send them to New Centaur, LLC to provide cover for the corporate contributions and disguise the transfers of money as payment for legitimate services.  The New Centaur, LLC executive and Rogers knew that neither Rogers nor anyone else would perform the services that would be reflected in the fake agreements that they agreed Rogers would create and send to New Centaur, LLC.

c.    After the April 10, 2015, meeting with the New Centaur, LLC executive, Rogers and O'Neil created fake invoices to send to New Centaur, LLC.  Rogers told KEELER that he would send invoices for services no one would perform and that

9

he would use the money that New Centaur, LLC, transferred to Rogers under the cover of the agreements and invoices to contribute to WALTZ's campaign.

d.   One of the agreements was dated May 1, 2015, and purported to be an agreement between New Centaur, LLC, and CCI in which CCI would perform services, such as "monitoring of all presidential candidates," "providing briefings as desired by you or other principals in your organization," "scheduling notices of candidates activities as requested by your organization," and "notification of any change in the federal campaign finance law as it relates to presidential campaigns." The fee listed for these services was $38,500, and the agreement purportedly expired on December 31, 2015. Rogers signed this agreement on behalf of CCI, and KEELER signed on behalf of New Centaur, LLC. Rogers and O'Neil knew this agreement was fake and they never intended to perform these services. KEELER also knew this agreement was fake and never intended for these services to be performed by anyone.

e.   The second fake agreement was dated May 10, 2015. This agreement purported to reflect services to be provided to New Centaur, LLC, by KRR. The services reflected in this agreement include "a review of various off-track betting facilities, racetrack betting facilities and recruitment techniques to improve horse population." The fee listed for these services was $41,000, due immediately, and the agreement purportedly expired on September 1, 2015. Rogers signed the agreement on behalf of KRR, and KEELER signed on behalf of New Centaur, LLC. Rogers and O'Neil knew this agreement was fake and they never intended to perform these services. KEELER also knew this agreement was fake and never

intended for these services to be performed by anyone.

f.   On or about May 8, 2015, Rogers and O'Neil emailed the two fake agreements and related invoices to KEELER at New Centaur, LLC.

g.   On or about May 13, 2015, KEELER caused New Centaur, LLC, to send payments purportedly for each of these two fake agreements in the form of two checks: one check was made out to CCI in the amount of $38,500, and the other was made out to KRR in the amount of $41,000.   As such, the total amount of money New Centaur, LLC sent to entities controlled by Rogers in order to execute this scheme was $79,500.

h.   Rogers and O'Neil never performed any of the services reflected in the two fake agreements, and neither KEELER nor any other New Centaur, LLC employee ever followed up to request the performance of these services.

i.   Prior to and during September 2015, Rogers and O'Neil recruited Straw Donors 1 through 9 and asked them to contribute $2,700 each to Brent Waltz for Congress with the promise that they each would be reimbursed for their contribution.   Each Straw Donor contributed by check a donation of $2,700 to Brent Waltz for Congress, and Rogers and O'Neil reimbursed each Straw Donor using the money from New Centaur, LLC.   Rogers and O'Neil also contributed $2,700 each to Brent Waltz for Congress, and reimbursed themselves with the money from New Centaur, LLC.

j.   Rogers also sent some of the New Centaur, LLC, money directly to WALTZ.   On or about September 1, 2015, Rogers caused $9,000 to be transferred by check from KRR to WALTZ.   On or about September 22, 2015, Rogers transferred to WALTZ

a $5,000 cashier's check payable to WALTZ.   On or about September 29, 2015,

Rogers caused $2,500 to be transferred by check from KRR to WALTZ.   In turn,

in late September 2015, WALTZ caused approximately $10,800 of this money to

be contributed to Brent Waltz for Congress using Straw Donors 10 through 13 as

conduits.

k.   Rogers kept the remaining New Centaur, LLC money, approximately $33,300, as

his fee for transferring the corporate contributions, and providing advice and

consultation, to Brent Waltz for Congress.

l.   On or about October 14, 2015, officials for the WALTZ campaign filed a Federal

Election Commission Form 3 that falsely identified Straw Donors 1 through 9, as

well as Rogers and O'Neil, as the source of their donations, instead of New Centaur,

LLC, which was the true source of the donations.

m.   On or about November 18, 2015, officials for the WALTZ campaign filed an

amended Federal Election Commission Form 3 that falsely identified Straw Donors

1 through 9, as well as Rogers and O'Neil, as the source of their donations, instead

of New Centaur, LLC, which was the true source of the donations.

All in violation of Title 18, United States Code, Section 371.

## COUNT TWO
### 52 U.S.C. §§ 30118, 30109(d)(1)(A)(i)
### 18 U.S.C. § 2
### (Corporate Contributions)

31.   Paragraphs 1 through 18 and 21 through 30 of this Indictment are re-alleged and

incorporated by reference as if set forth fully herein.

32.   In or around January 1, 2015, and continuing through in or around September 29,

2015, in the Southern District of Indiana and elsewhere, the defendant,

12

**JOHN S. KEELER,**

knowingly and willfully caused contributions of corporate money, aggregating $25,000.00 and

more during the 2015 calendar year, by New Centaur, LLC, in connection with a primary

election held to select candidates for a United States Representative.

All in violation of 52 U.S.C. §§ 30118 and 30109(d)(1)(A)(i), and 18 U.S.C. § 2.

## COUNT THREE
### 18 U.S.C. § 371
### (Conspiracy to Make and Receive Conduit Contributions, False Statements, and to Obstruct Justice)

33.     Paragraphs 1 through 18 and 21 through 30 of this Indictment are re-alleged and

incorporated by reference as if set forth fully herein.

34.     From in or about January 2015 through in or about November 18, 2015, in the

Southern District of Indiana and elsewhere, the defendant,

**DARRYL BRENT WALTZ,**

knowingly and voluntarily conspired and agreed with other persons both known and unknown to

the grand jury, to commit the following offenses against the United States:

    a.     To knowingly and willfully make contributions in the name of another person and

permit one's name to be used to effect such contributions, and knowingly accept

and receive contributions made by one person in the name of another person in

connection with any election at which a United States Representative is to be voted

for, and in connection with any primary election to select candidates for United

States Representative, which aggregated more than $25,000 in a calendar year, in

violation of Title 52, United States Code, Sections 30122 and 30109(d)(1)(A)(i)

and Title 18, United States Code, Section 2;

b.    To knowingly and willfully cause the submission of materially false, fictitious, and fraudulent statements and representations in a matter within the jurisdiction of the Federal Election Commission, a department or agency of the executive branch of the government of the United States, in violation of Title 18, United States Code, Sections 1001(a)(2) and 2; and

c.    To knowingly conceal, cover up, falsify, and make a false entry in records and documents, and cause others to do so, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, and in relation to and contemplation of such matter, in violation of Title 18, United States Code, Sections 1519 and 2.

### A.    Purposes of the Conspiracy

35.    The purposes of the conspiracy were for WALTZ to facilitate and cause unlawful contributions through Rogers and WALTZ to the Brent Waltz for Congress campaign, in order to: evade the prohibition against contributions made in the names of others; disguise the true sources of the funds that Straw Donors 1 through 13 contributed to the campaign; evade the limits placed on money that individuals could contribute to the Brent Waltz for Congress campaign; and to cause officials of the Brent Waltz for Congress campaign to unwittingly file false reports of contributions that concealed from the Federal Election Commission and the public the true sources of the contributions.

### B.    The Manner and Means of the Conspiracy

36.    The manner and means of the conspiracy included, but were not limited to, the following:

14

37.     WALTZ and Rogers agreed that Rogers would transfer money from accounts he controlled to WALTZ's personal bank accounts, WALTZ would give some or all of that money to straw donors, and the straw donors would contribute that money to Brent Waltz for Congress.

38.     As a part of the conspiracy, WALTZ recruited Straw Donors 10 through 13, who agreed that they would each make contributions in the maximum allowed amount of $2,700 in their names to the Brent Waltz for Congress campaign in exchange for a full reimbursement by WALTZ.  WALTZ and Straw Donors 10 through 13 agreed that WALTZ would repay each of them in full for their contribution, either in advance, contemporaneously with, or after they made their $2,700 contribution to Brent Waltz for Congress.  In accordance with these agreements, Straw Donors 10 through 13 did, in fact, each contribute $2,700 to the Brent Waltz for Congress campaign, and WALTZ caused the reimbursement of each of these Straw Donors.

39.     In order to reimburse Straw Donors 11, 12, and 13, and in an effort to disguise and conceal those reimbursements, WALTZ wrote a check to Company B in the amount of $8,100 (which is equivalent to three maximum $2,700 contributions).   WALTZ then caused Company B to issue checks in the amounts of $5,400 to pay Straw Donors 11 and 12 for their contributions, and $2,700 to pay Straw Donor 13 for his contribution, thereby routing the unlawful contribution reimbursements through the accounts of Company B.   WALTZ reimbursed Straw Donor 10 using cash.

40.     WALTZ concealed from officials of the WALTZ campaign, the Federal Election Commission, and the public the true sources of these contributions to Brent Waltz for Congress, thereby causing the campaign unwittingly to file reports with the Federal Election Commission that were materially false, in that these reports failed to provide accurate information concerning the source and amount of the contributions as required by law.

## C.   Overt Acts in Furtherance of the Conspiracy

41.    In furtherance of the conspiracy, and to accomplish its purpose, WALTZ, Rogers, and others known and unknown to the grand jury, performed or caused the performance of one or more of the following overt acts, among others not described herein, in the Southern District of Indiana and elsewhere on or about the following dates:

a.    Prior to and during September 2015, WALTZ recruited Straw Donors 10 through 13 and asked them to contribute $2,700 each to Brent Waltz for Congress with the promise that they each would be reimbursed for their contribution.   Each of these Straw Donors agreed to contribute $2,700 in exchange for a full reimbursement by WALTZ.

b.    On or about September 1, 2015, Rogers caused $9,000 to be transferred by check from KRR to WALTZ.   On or about September 22, 2015, Rogers transferred to WALTZ a $5,000 cashier's check payable to WALTZ.   On or about September 29, 2015, Rogers caused $2,500 to be transferred by check from KRR to WALTZ. On the same day, Rogers caused a $3,000 cashier's check to be sent and paid to WALTZ, and WALTZ wrote a $2,700 check to contribute to his campaign.

c.    On or about September 25, 2015, WALTZ wrote a personal check to Company B in the amount of $8,100.

d.    On or about September 25, 2015, WALTZ caused Company B to issue a check to Straw Donors 11 and 12 in the combined amount of $5,400 (a reimbursement of two $2,700 contributions).   On or about September 30, 2015, Straw Donor 12 deposited these funds into a joint account in the name of Straw Donors 11 and 12. That same day, Straw Donor 12 wrote a check from their joint account to the Brent

Waltz for Congress campaign in the amount of $5,400.

e.      On or about September 25, 2015, WALTZ caused Company B to issue a check to Straw Donor 13 in the amount of $2,700.   On or about September 28, 2015, Straw Donor 13 wrote a check in the amount of $2,700 to the Brent Waltz for Congress campaign.

f.      On or about September 29, 2015, WALTZ wrote a check to "cash" in the amount of $3,000, effectively withdrawing that amount of cash from his account.   On the same day, WALTZ personally visited Straw Donor 10 at her home.   During this visit, WALTZ gave Straw Donor 10 at least $2,700 in cash.   In exchange for that cash, Straw Donor 10 wrote a $2,700 check to the Brent Waltz for Congress campaign.   The next day, on or about September 30, 2015, Straw Donor 10 deposited the $2,700 in cash into her personal bank account.

g.      On or about October 14, 2015, officials for the WALTZ campaign filed a Federal Election Commission Form 3 that falsely identified Straw Donors 10 through 13 as the source of their donations, instead of WALTZ and Rogers, which were the true sources of these donations.

h.      On or about November 18, 2015, officials for the WALTZ campaign filed an amended Federal Election Commission Form 3 that falsely identified Straw Donors 10 through 13 as the source of their donations, instead of WALTZ and Rogers, which were the true sources of these donations.

All in violation of Title 18, United States Code, Section 371.

**COUNT FOUR**
**52 U.S.C. § 30122**
**(Making and Receiving Conduit Contributions)**

42.     Paragraphs 1 through 18, 21 through 30, and 35 through 41 of this Indictment are

re-alleged and incorporated by reference as if set forth fully herein.

43.     In or around January 1, 2015, and continuing through on or about November 18,

2015, in the Southern District of Indiana and elsewhere, the defendant,

**DARRYL BRENT WALTZ,**

willfully caused contributions of money to be made in the names of persons who were not the

true sources of the contributions, and willfully accepted those contributions, aggregating

$25,000.00 and more during the 2015 calendar year, in connection with a primary election held

to select candidates for a United States Representative.

All in violation of 52 U.S.C. §§ 30122 and 30109(d)(1)(A)(i), and 18 U.S.C. § 2.

**COUNT FIVE**
**18 U.S.C. § 1001(a)(2)**
**(False Statements)**

44.     Paragraphs 1 through 18 and 21 through 30 of this Indictment are re-alleged and

incorporated by reference as if set forth fully herein.

45.     On or about October 14, 2015, in the Southern District of Indiana and elsewhere,

in a matter within the jurisdiction of the executive branch of the government of the United States,

the defendant,

**JOHN S. KEELER,**

knowingly and willfully caused the submission of a materially false, fictitious, and fraudulent

statement and representation, that is the filing by an unwitting authorized campaign committee of

a candidate for the Office of United States Representative with the Federal Election Commission,

of a report that was materially false in failing to report the source and amount of contributions to

the campaign by a corporation, namely New Centaur, LLC.

All in violation of 18 U.S.C. §§ 1001(a)(2) and 2.

### COUNT SIX
### 18 U.S.C. § 1519
### (Falsification of a Record or Document)

46.   Paragraphs 1 through 18 and 21 through 30 of this Indictment are re-alleged and incorporated by reference as if set forth fully herein.

47.   On or about October 14, 2015, in the Southern District of Indiana and elsewhere, the defendant,

### JOHN S. KEELER,

knowingly concealed, covered up, falsified, and made false entries in a record and document, and caused others to do so, with the intent to impede, obstruct, and influence the investigation and proper administration of a matter within the jurisdiction of a department and agency of the United States, and in relation to and contemplation of such matter, to wit: KEELER caused a report to be filed by Brent Waltz for Congress with the Federal Election Commission that falsely failed to report the source and amount of contributions to the campaign by a corporation, namely New Centaur, LLC.

All in violation of 18 U.S.C. §§ 1519 and 2.

### COUNT SEVEN
### 18 U.S.C. § 1001(a)(2)
### (False Statements)

48.   Paragraphs 1 through 18, 21 through 30, and 35 through 41 of this Indictment are re-alleged and incorporated by reference as if set forth fully herein.

49.   On or about October 14, 2015, in the Southern District of Indiana and elsewhere, in a matter within the jurisdiction of the executive branch of the government of the United States, the defendant,

**DARRYL BRENT WALTZ,**

knowingly and willfully caused the submission of a materially false, fictitious, and fraudulent

statement and representation, that is the filing by an unwitting authorized campaign committee of

a candidate for the Office of United States Representative with the Federal Election Commission,

of a report that was materially false in failing to report that WALTZ caused contributions of

money to be made in the names of persons who were not the true sources of the contributions.

All in violation of 18 U.S.C. §§ 1001(a)(2) and 2.

## COUNT EIGHT
### 18 U.S.C. § 1519
**(Falsification of a Record or Document)**

50.     Paragraphs 1 through 18, 21 through 30, and 35 through 41 of this Indictment are

re-alleged and incorporated by reference as if set forth fully herein.

51.     On or about October 14, 2015, in the Southern District of Indiana and elsewhere,

the defendant,

**DARRYL BRENT WALTZ,**

knowingly concealed, covered up, falsified, and made false entries in a record and document, and

caused others to do so, with the intent to impede, obstruct, and influence the investigation and

proper administration of a matter within the jurisdiction of a department and agency of the

United States, and in relation to and contemplation of such matter, to wit: WALTZ caused a

report to be filed by Brent Waltz for Congress with the Federal Election Commission that falsely

failed to report that WALTZ caused contributions of money to be made in the names of persons

who were not the true sources of the contributions.

All in violation of 18 U.S.C. §§ 1519 and 2.

20

**COUNT NINE**
**18 U.S.C. § 1001**
**(False Statements)**

52.     Between or about July 26, 2018, and July 30, 2018, within the Southern District

of Indiana and elsewhere,

**DARRYL BRENT WALTZ,**

knowingly and willfully made materially false, fictitious and fraudulent statements and

representations in a matter within the jurisdiction of the Federal Bureau of Investigation (FBI),

which is an agency of the executive branch of the United States, that is, during an interview by

Special Agents of the FBI about the investigation of the conspiracies described in Counts One

and Three, specifically pertaining to the money WALTZ received from Kelley Rogers and

money WALTZ purportedly loaned to his campaign:

a.     WALTZ falsely told the FBI that Rogers asked WALTZ if Rogers could retain

WALTZ's investment banking services as a means to maintain their relationship

in spite of their disappointment in Rogers' ability to raise contributions to Brent

Waltz for Congress, when in truth and in fact, as WALTZ well knew, no such

conversation occurred.

b.     WALTZ falsely told the FBI that he received approximately $12,000 from Rogers

as retainer payments for his investment banking services, when in truth and in

fact, as WALTZ well knew, he received no such sum as payment for investment

banking services.   WALTZ said that he did not provide a receipt to Rogers for

this transaction.

c.     WALTZ falsely told the FBI that he sold artwork and other items in order to have

cash available for his campaign, and these sales produced over $100,000 that

WALTZ subsequently loaned to his campaign, when in truth and in fact, as

WALTZ well knew, Persons A and B provided these funds as a gift, loan, or other

contribution to WALTZ's campaign, in violation of the limits of the Election Act.

All of which is a violation of Title 18, United States Code, Section 1001(a)(2).

A TRUE BILL:

FOREPERSON

JOHN CHILDRESS
Attorney for the United States,
Acting Under Authority Conferred
by 29 U.S.C. § 515

By:  Bradley P. Shepard
MaryAnn T. Mindrum
Assistant United States Attorneys

COREY R. AMUNDSON
CHIEF, PUBLIC INTEGRITY SECTION
UNITED STATES DEPARTMENT OF JUSTICE

By:  William J. Gullotta
John P. Taddei
Trial Attorneys

22